IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VANDANA UPADHYAY, | No. C 13-1368 SI |
| Plaintiff, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| AETNA LIFE INSURANCE COMPANY, | |
| Defendant. | |

Defendant Aetna Life Insurance Company's motion for summary judgment came on for oral argument on December 10, 2013. Having considered the parties' motion papers, pleadings and arguments, the Court GRANTS defendant's motion for summary judgment.

**BACKGROUND**

This is an action brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et. seq.* In March of 2005, plaintiff Vandana Uphadhyay was hired by Symmetricom, Inc. ("Symmetricom") as a Senior Director of Business Development. Docket No. 29, Uphadhyay Decl. ¶ 2; Docket No. 31-1, LaRosa Decl. Ex. A. Shortly after being hired, plaintiff was injured while attending an industry conference in Dallas. Docket No. 29, Uphadhyay Decl. ¶ 4. As a result of the accident, plaintiff suffers from Bilateral Thoracic Outlet Syndrome. *Id.* ¶ 5.

Eventually, on January 2, 2007, plaintiff took a medical leave of absence from Symmetricom and her employment was terminated effective February 27, 2007 while she was on leave. *Id.*; Docket

No. 33-1, Valentine Decl. Ex. A § B. On February 11, 2009, plaintiff filed a complaint in state court against Symmetricom alleging claims for wrongful termination in violation of public policy, violations of the California Family Rights Act and the Family Medical Leave Act, defamation, and intentional infliction of emotional distress. Docket No. 33-1, Valentine Decl. Ex. A § C. On May 3, 2010, as a result of a JAMS mediation, plaintiff and Symmetricom entered into a settlement agreement, containing a general release of claims. *See id.*

On December 15, 2010, Aetna received an application from plaintiff for long-term disability benefits under the group long-term disability policy issued by Aetna to Symmetricom ("the Plan"). Docket No. 31-1, LaRosa Decl. Ex. A. On February 1, 2011, Aetna sent plaintiff a letter denying her claim for long-term disability benefits on the basis that plaintiff's claim was untimely and plaintiff failed to prove that she met the definition of disabled as described in the Plan. Docket No. 31-4, LaRosa Decl. Ex. D. Plaintiff appealed Aetna's denial of benefits. On July 18, 2012, Aetna sent a letter to plaintiff denying her appeal and upholding its prior determination that she was not entitled to long-term disability benefits under the Plan. Docket No. 31-5, LaRosa Decl. Ex. E.

On March 27, 2013, plaintiff filed a complaint against Aetna, alleging a cause of action under 29 U.S.C. § 1132(a)(1)(B) to recover benefits due to her under the terms of her plan and a cause of action under 29 U.S.C. § 1132(a)(3) for breach of fiduciary duty. Compl. ¶¶ 13-25. By the present motion, defendant moves for summary judgment of its waiver and limitations affirmative defenses. Docket No. 30, Def.'s Mot.

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party, however, has no burden to disprove matters on which the non-moving party will have the burden of proof at trial. The moving party need only demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325.

2

Once the moving party has met its burden, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex*, 477 U.S. at 324). To carry this burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence . . . will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In deciding a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Id.* at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment." *Id.* However, conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, the evidence the parties present must be admissible. Fed. R. Civ. P. 56(c)(2).

**DISCUSSION**

**I.    Whether Aetna Is Precluded From Raising Its Affirmative Defenses**

As an initial matter, plaintiff argues that Aetna's waiver and limitations defenses fail because Aetna did not raise them during the administrative process. Docket No. 27, Pl's Opp'n at 8-12. The Ninth Circuit has explained:

> An ERISA plan administrator who denies a claim must explain the "specific reasons for such denial" and provide a "full and fair review" of the denial. 29 U.S.C. § 1133. The administrator must also give the claimant information about the denial, including the "specific plan provisions" on which it is based and "any additional material or information necessary for the claimant to perfect the claim." 29 C.F.R. § 2560.503-1(g). A plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court, unless the plan beneficiary has waived any objection to the reason being advanced for the first time during the judicial proceeding.

*Harlick v. Blue Shield of Cal.*, 686 F.3d 699, 719 (9th Cir. 2012). The Ninth Circuit has stated that this

3

requirement "parallels the general rule that 'an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself,' not a subsequent rationale articulated by counsel." *Jebian v. Hewlett-Packard Co. Emple. Benefits Org. Income Prot. Plan*, 349 F.3d 1098, 1104 (9th Cir. 2003) (quoting *Federal Power Comm'n v. Texaco, Inc.*, 417 U.S. 380, 397 (1974)).

At this stage in the proceedings, the Court is not evaluating the validity of Aetna's decision to deny plaintiff long-term disability benefits. The Court agrees that if it were being asked to conduct a de novo or abuse of discretion review of Aetna's decision to deny plaintiff long-term benefits, Aetna could not raise the release as a reason for its denial because the release was not raised during the administrative process. *See Harlick*, 686 F.3d at 719-20. However, Aetna is not requesting that the Court uphold its denial of benefits. By the present motion for summary judgment, the Court is being asked to determine whether plaintiff's ERISA action is barred by Aetna's waiver defense or limitations defense. Because the Court is not reaching the merits of Aetna's decision to deny benefits, Aetna's may raise these affirmative defenses even if they were not raised during the administrative process. *Cf. Orndorf v. Paul Revere Life Ins. Co.*, 404 F.3d 510, 520 (1st Cir. 2005) (explaining that where the challenge is not to the merits of the decision to deny benefits, evidence outside of the administrative record may be relevant and admissible). It is important to recognize that although the release could have served as a basis for denying benefits during the administrative process, the release is also a defense to the present ERISA action itself. Under the terms of the settlement agreement, plaintiff not only waived her right to benefits under the Plan, she also waived her right to bring an ERISA action in federal court. *See* Docket No. 33-1, Valentine Decl. Ex. A § 4.

In *Parisi v. Kaiser Found. Health Plan Long Term Disability Plan*, 2008 U.S. Dist. LEXIS 5770, at *3 n.1, 8-9 (N.D. Cal. Jan. 25, 2008), a court in this district held that it could consider the effect of a release agreement even though it was not part of the administrative record, there was also evidence that the administrator was aware of the release agreement prior to the denial of benefits, and the release was not the reason that the plaintiff was denied long-term benefits. The district court explained "the Court is not opening up the administrative record or reviewing the administrator's denial under an abuse of discretion standard. Rather, the Court reviews the Release as part of Defendant's affirmative defense of waiver and, because the agreement is central to the relationship between the parties, the Court finds

4

it material." *Id.* at *9. This Court agrees with the decision in *Parisi* and holds that Aetna may raise its waiver defense in this action even if it was not raised during the administrative process.

The Court also notes the purpose for ERISA's requirement that plan administrators provide claimants with the specific reasons for denial of benefits. The Ninth Circuit has explained that "[r]equiring that plan administrators provide a participant with specific reasons for denial enable[s] the claimant to prepare adequately for any further administrative review, as well as appeal to the federal courts." *Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 1192, 1199 n.2 (9th Cir. 2010); *see also Halpin v. W.W. Grainger, Inc.*, 962 F.2d 685, 689 (7th Cir. 1992) ("'[D]escribing additional information needed and explaining its relevance, as required by subsection (3) of 29 C.F.R. § 2560.503-1, enables a participant both to appreciate the fatal inadequacy of his claim as it stands and to gain a meaningful review by knowing with what to supplement the record.'"). Here, Aetna's failure to present the release agreement during the administrative process has not prevented plaintiff from preparing adequately for this action. Plaintiff was aware of the release and its terms. Further, because the release agreement is integrated and its terms are unambiguous, there is no additional evidence that plaintiff could have used to supplement the record during the administrative process to contradict the terms of the agreement. *See Parisi*, 2008 U.S. Dist. LEXIS 5770, at *9; *Bennett v. CNA Ins. Cos.*, 2001 U.S. Dist. LEXIS 107, at *13 (N.D. Cal. Jan. 8, 2001).

The Court also concludes that Aetna may raise its limitations defense in this action. Indeed, because Aetna's limitations defense challenges the timeliness of plaintiff's federal action, Def.'s Mot. at 13-16, it would have been impossible for Aetna to raise that defense during the administrative process. Accordingly, the Court rejects plaintiff's argument that Aetna's waiver and limitations affirmative defenses fail because they were not raised during the administrative process.

## II. Aetna's Waiver Defense

Aetna moves for summary adjudication of its affirmative defense of waiver. Aetna argues that plaintiff entered into a valid settlement agreement with Symmetricom, releasing Symmetricom's insurers and employee benefit plans from claims arising under ERISA. Docket No. 30, Def.'s Mot. at 8-13. In response, plaintiff argues that the settlement agreement did not release any claims against

5

Aetna. *Id.* at 17-20.

Section 1110(a) of ERISA provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [the fiduciary responsibility sections of ERISA] shall be void as against public policy." 29 U.S.C. § 1110(a). Nonetheless, courts have uniformly permitted "knowing and voluntary" private releases of statutory claims. *See, e.g.*, *Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*, 167 F.3d 709, 713 (1st Cir. 1999); *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir. 1990); *Finz v. Schlesinger*, 957 F.2d 78, 81-82 (2d Cir. 1992); *Dist. 29 United Mine Workers of Am. v. New River Co.*, 842 F.2d 734, 737 (4th Cir. 1988); *Rombeiro v. Unum Life Ins. Co. of Am.*, 761 F. Supp. 2d 862, 868 (N.D. Cal. 2010); *see also Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1012 (9th Cir. 1997) (explaining that if the defendant argued that the agreements in the case were waivers of benefits, the court "would have to consider whether the mistaken waiver must and would withstand special scrutiny designed to prevent potential employer or fiduciary abuse").

Under the "heightened scrutiny" that federal precedents require for waivers of ERISA pension benefits, courts are obligated to "scrutinize an ostensible waiver with care in order to ensure that it reflects the purposeful relinquishment of an employee's rights." *Morais*, 167 F.3d at 713. A court must determine whether a waiver is "knowing and voluntary" by examining the totality of the circumstances, including but not limited to "(1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver." *Id.* at 713 n. 6; *Finz*, 957 F.2d at 82.

The relevant provision of the settlement agreement provides as follows:

> Ms. Upadhyay . . . hereby fully releases and forever discharges Symmetricom and each of its predecessors, successors, employee benefit plans, present and former officers, directors, employees . . . , agents, affiliates, successors, assigns, insurers, attorneys and consultants (collectively, **"Defendant Releasees"**) from any and all claims, debts, demands, accounts, judgments, rights, causes of action, equitable relief, damages, costs, charges, complaints, obligations, promises, agreements, controversies, suits, expenses, compensation, responsibility and liability of every kind and character whatsoever . . . whether in law or equity, known or unknown, asserted or unasserted, suspected or unsuspected . . . , which Ms. Upadhyay has or may have had against the Defendant Releasees based on any events or circumstances arising or occurring on or prior to the date hereof, including . . . any Claims arising under . . . the Employee Retirement Income

6

Security Act . . . .

Docket No. 33-1, Valentine Decl. Ex. A § 4 (emphasis in original).[1]

After reviewing the totality of the circumstances based on the undisputed facts, the Court concludes that plaintiff knowingly and voluntarily waived her ERISA claims. The settlement agreement was the result of a JAMS mediation. *Id.* § D. Plaintiff is a sophisticated business executive, who was employed by Symmetricom as its Senior Director of Business Development with a salary of over $150,000 per year. Docket No. 29, Uphadhyay Decl. ¶ 2; Docket No. 31-1, LaRosa Decl. Ex. A. The settlement agreement states that plaintiff consulted with her attorneys prior to entering into the agreement. Docket No. 33-1, Valentine Decl. Ex. A § 5.d. It appears—based on the date of execution—that plaintiff had almost two months to study the agreement. *See id.* (stating that the agreement was entered into on May 3, 2010 and executed on July 1, 2010). Plaintiff also had the right to revoke the agreement within seven days of signing it. *Id.* § 5.d. Plaintiff received $300,000 as consideration for the release. *Id.* § 1. In addition, plaintiff was able to expressly carve out certain claims from the release, such as her then pending worker's compensation claim. *Id.* § 4.

Moreover, the terms of the release are clear. The release expressly states that it applies to Symmetricom's agents, insurers, and employee benefit plans and applies to any claims arising under ERISA. *Id.* The inclusion of these specific terms distinguishes the release in the present action from the release that was at issue in the Court's prior decision in *Rombeiro v. Unum Life Ins. Co. of Am.*, where the Court denied defendant's motion for summary judgment of its waiver defense. *See* 761 F. Supp. 2d at 869 (noting that the release did not mention the plan or ERISA by name). The present release is more similar to the releases in cases where district courts have found a knowing and voluntary waiver. *See, e.g.*, *Parisi*, 2008 U.S. Dist. LEXIS 5770, at *2-3 (finding waiver where the release expressly applied to claims under ERISA); *Piehl v. Metro. Life Ins. Co.*, 2005 U.S. Dist. LEXIS 4619, at *4-5 (D. Or. Mar. 16, 2005) (same).

---

[1] In her opposition, plaintiff argues that Aetna has failed to present any admissible evidence in support of its assertion that plaintiff released her ERISA claims. Pl.'s Opp'n at 16-17. Specifically, plaintiff argues that Mr. LaRosa's statements in his declaration are inadmissible because they are not based on personal knowledge. *Id.* However, plaintiff's argument fails to consider that the settlement agreement itself is evidence that plaintiff released her ERISA claims. Plaintiff does not object to the admissibility of the settlement agreement.

7

In her opposition, plaintiff argues that the waiver was not knowing and voluntary because long-term disability benefits were never discussed during the settlement negotiations, and plaintiff did not intend to release her disability claims when she entered into the agreement. However, because the settlement agreement is an integrated contract and its terms are unambiguous, extrinsic evidence cannot be used to contradict the express terms of the release. *See Parisi*, 2008 U.S. Dist. LEXIS 5770, at *9; *Bennett*, 2001 U.S. Dist. LEXIS 107, at *13. Accordingly, the Court grants Aetna's motion for summary judgment of its waiver defense.

### III.  Aetna's Limitations Defense

Aetna also moves for summary judgment of its defense that plaintiff's action is barred because it is untimely. "There are two parts to the determination of whether a claimant's ERISA action is timely filed: [a court] must determine first whether the action is barred by the applicable statute of limitations, and second whether the action is contractually barred by the limitations provision in the policy." *Withrow v. Bache Halsey Stuart Shield, Inc.*, 655 F.3d 1032, 1035 (9th Cir. 2011). Here, Aetna does not argue that plaintiff's action is barred by the applicable statute of limitations; rather, Aetna only argues that plaintiff's action is contractually barred by the limitations provision in the relevant policy. Def.'s Mot. at 13-16.

"Absent a controlling statute to the contrary, a participant and a plan may agree by contract to a particular limitations period, even one that starts to run before the cause of action accrues, as long as the period is reasonable." *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 2013 U.S. LEXIS 9026, at *13 (Dec. 16, 2013).[2] The contractual limitations "period begins to run as defined by the plan's terms." *Koblentz v. UPS Flexible Emple. Benefit Plan*, 2013 U.S. Dist. LEXIS 121389, at *7 (S.D. Cal. Aug. 23, 2013) (citing *Mogck v. Unum Life Ins. Co. of Am.*, 292 F.3d 1025, 1028 (9th Cir. 2002)); *see*

---

[2] On December 17, 2013, Aetna filed a notice of new controlling authority, citing the Supreme Court's recent decision in *Heimeshoff*. Docket No. 38. Subsequently, plaintiff filed an objection to the notice. Docket No. 39. In the objection, plaintiff argues that Aetna's notice did not comply with Civil Local Rule 7-3(d) because it was filed after the noticed hearing date and contains attorney argument. *Id.* The Court agrees that Aetna's filing did not comply with Civil Local Rule 7-3(d) and, therefore, declines to consider Aetna's notice and the arguments provided therewith. However, the Court discovered the *Heimeshoff* decision through its own research.

8

*Heimeshoff*, 2013 U.S. LEXIS 9026, at *16 (explaining that parties may contractually agree to "not only to the length of a limitations period but also to its commencement").

The Plan provides: "No legal action can be brought to recover under any benefit after 3 years from the deadline for filing claims." Docket No. 31-3, LaRosa Decl. Ex. C at AETNA-UP000021. "The deadline for filing a claim for benefits is 90 days after the end of the elimination period." *Id.* at AETNA-UP000020. The Plan defines the elimination period for long-term disability benefits as the first 90 days of a period of disability. *Id.* at AETNA-UP000003.

In her claim for benefits, plaintiff listed her disability date as January 2, 2007. Docket No. 31-1, La Rosa Decl. Ex. A. Therefore, under the terms of the plan the elimination period ended on April 1, 2007; the deadline for filing a claim for long-term benefits was July 1, 2007; and the contractual limitations period ended on July 1, 2010. But, plaintiff did not file her claim for benefits until December 15, 2010 and did not file the present lawsuit until March 27, 2013, and *See id.*; Compl. Therefore, plaintiff's ERISA action is untimely under the provisions of the Plan.

In her opposition, plaintiff does not argue that the limitations period provided in the Plan is *per se* unreasonable or that a "controlling statute" prevents the limitations provision from taking effect. Rather, plaintiff argues that it is contrary to common sense to require plaintiff to file her ERISA action challenging Aetna's denial of benefits before plaintiff had even submitted her claim for benefits to Aetna. Pl.'s Opp'n at 15. However, plaintiff's argument fails to consider that the only reason why the contractual limitations period ran prior to plaintiff filing her claim for benefits is that plaintiff did not file her claim for benefits until three and a half years after the deadline passed. Plaintiff received the final denial of her claim on July 18, 2012—approximately one year and seven months after the claim was submitted. Therefore, had plaintiff submitted the claim by the July 1, 2007 deadline, plaintiff would have had approximately a year and five months to file her ERISA action, a reasonable amount of time.[3] *See Heimeshoff*, 2013 U.S. LEXIS 9026, at *19 n.4 (stating that an administrative review period of 15 to 16 months "leaves ample time for filing suit"). Moreover, in its recent decision *Heimeshoff*, the

---

[3] Even if plaintiff had filed her claim one year after the deadline as allowed under the Plan, *see* Docket No. 31-3, LaRosa Decl. Ex. C. at AETNA-UP000020, plaintiff would have had approximately five months to file her ERISA action.

9

Supreme Court expressly recognized that a contractual limitations period may start to run before the plaintiff's ERISA cause of action accrues, and the Supreme Court found a similar three-year contractual limitations provision reasonable. *See id.* at \*13, 18-20; *see also e.g.*, *Doe v. Blue Cross & Blue Shield United*, 112 F.3d 869, 82-75 (7th Cir. 1997) (finding similar three-year contractual limitations provision reasonable); *Sousa*, 252 F. Supp. 2d at 1054-55 (same). Therefore, the Court concludes that the contractual limitations provision in this case is reasonable.

Plaintiff also argues that Aetna's defense of late notice must be rejected because Aetna has failed to prove that it was prejudiced by plaintiff's delay in submitting her claim. Pl.'s Opp'n at 12-14. "'[A] defense based on an insured's failure to give timely notice [of a claim] requires the insurer to prove that it suffered actual prejudice.'" *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 366 (1999). However, the defense at issue in Aetna's motion for summary judgment is not a defense challenging the timeliness of plaintiff's claim for benefits; it is a defense challenging the timeliness of plaintiff's ERISA action. Plaintiff has not provided the Court with any authority holding that a showing of prejudice is required to prevail on a limitations defense challenging the timeliness of an ERISA action.

In sum, Aetna has met its burden of showing that plaintiff's action is contractually barred by the limitations provision in the Plan. Accordingly, the Court grants Aetna's motion for summary judgment of its limitations defense.

# CONCLUSION

For the foregoing reasons, the Court GRANTS defendant's motion for summary judgment. This Order resolves Docket Nos. 21, 30.

**IT IS SO ORDERED.**

Dated: January 16, 2014

SUSAN ILLSTON
United States District Judge